

**U.S. Department of Justice**

United States Attorney
Northern District of Texas

_____

*1100 Commerce Street, Third Floor*     *Main:  214.659.8600*
*Dallas, Texas    75242-1699*         *Fax:  214.659.8812*

July 12, 2013

Ahmed Ghappour
Civil Rights Clinic, UT School of Law
727 Dean Keeton St.
Austin, TX 78705

Re:     *United States v. Barrett Lancaster Brown*
          3:12-CR-317-L, 3:12-CR-413-L, 3:13-CR-030-L

Dear Mr. Ghappour,

This correspondence serves to respond to your discovery letter dated July 1, 2013.  The
"Demand for a Bill of Particulars" will be addressed in a separate letter.  Please note that
the government's responses to your specific requests begin on page 6.

## General Discovery Principles

First, the government wishes to review in clear terms the nature, scope, and purpose of
Fed. R. Crim. P. 16 and 26.2; 18 U.S.C. § 3500 (Jencks Act); and *Brady v. Maryland*,
373 U.S. 83 (1963) and its progeny with reference to defendant's lawful entitlement by
way of discovery.

Fed. R. Crim. P. 16| Except as provided by 18 U.S.C. § 3509(m), discovery is governed
by Fed. R. Crim. P. 16.  Under the discovery provisions of the Rule, a defendant is
entitled to four things:  (1) his statement (a) if written or recorded and in the possession
or control of the government, (b) if made orally "in response to interrogation by a person
the defendant knew was a government agent," or (c) if recorded while testifying before

~ 1 ~

the grand jury; (2) his prior criminal record; (3) documents and tangible objects which are material to the preparation of the defense, or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant; and (4) results or reports of scientific tests or experiments which are material to the preparation of the defense or intended for use by the government as evidence in chief at the trial.

Fed. R. Crim. P. 16(a)(2)|   Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Fed. R. Crim. P. 16(a)(3)|   This rule does not apply to the discovery or inspection of a grand jury's recorded proceedings, except as provided in Rules 6, 12(h), 16(a)(1), and 26.2.  With regard to a defendant's entitlement under Rule 16, the government will continue to make available for the defendant inspection and copying all documentary material and physical evidence which they are entitled to discover under the Rule.  This material constitutes the bulk of the government's investigative file.  It should also be pointed out that Rule 16 does not make all statements made by a defendant discoverable. Specifically, unrecorded statements made by a defendant to a third person who is not a government agent are not discoverable.  A contrary result would present an obvious conflict with the Rule itself (Fed. R. Crim.  P. 16(a)(2)), Fed. R. Crim. P. 26.2 and with 18 U.S.C. §  3500 (Jencks Act).  *United States v Pollock*, 534 F.2d 964, 975-76 (D.C. Cir. 1976); *United States v. Walk*, 533 F.2d 417 (9th Cir. 1975).  Moreover, as a defendant will receive both exculpatory evidence and the statements of those witnesses who will testify against him at trial, all such statements ultimately will be provided to him, either as Brady material or under Fed. R. Crim. P. 26.2.  It is quite plain from the above that Rule 16 does not give the defense the right to discover all the government's evidence. The government will provide the defendant with all material to which they are entitled under Fed. R. Crim. P. 16(a).

Fed. R. Crim. P. 26.2 and 18 U.S.C. § 3500|      Fed. R. Crim. P. 26.2 and 18 U.S.C. § 3500, also known as the *Jencks Act*, specifically define a criminal defendant's

entitlement to statements by prospective government witnesses.  Rule 26.2 establishes the defendant's entitlement and, in relevant part, provides:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and his attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

In regard to such production, 18 U.S.C § 3500, the *Jencks Act*, is a specific statutory prohibition against the premature disclosure of such material.  *United States v. Campagnuolo*, 592 F.2d 852, 861 (5th Cir. 1979).  In relevant part, the Jencks Act states:

> In any criminal prosecution brought by the United States, no statement or report . . . which was made by a government witness or a prospective government witness shall be the subject of . . . discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500.

Agent's debriefing reports (302s) and notes, unless specifically approved or adopted by the non-agent witness, are not Jencks materials to that witness. *United States v. Martinez,* 87 F.3d 731 (5th Cir. 1996).  The purpose of the disclosure mandated by Rule 26.2 itself is to facilitate meaningful defense cross-examination.  Neither the courts nor Congress believe that earlier disclosure is necessary.  Therefore, a request by defendant for such material is clearly satisfied by the government in voluntarily providing witness statements prior to the witness's testimony.  The United States will provide witness statements to the defendant the day before that witness's trial testimony.  The United States expects reciprocal discovery from the defendant pursuant to the same rule.

*Brady v. Maryland*|  In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court ruled:

> that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment.

Later cases, such as *Giglio v. United States*, 405 U.S. 150 (1972), further interpreted and expanded the government's duties in this regard.  However, the affirmative duty imposed

on the government by *Brady* and its progeny remains only the duty to disclose certain evidence favorable to the defense. *Brady* did not impose on the government the duty of allowing the defense to search the government's files for possibly exculpatory material. *United States v. Agurs*, 427 U.S. 97, 110-111 (1976).

In addition, *Brady* and its progeny are not applicable to pretrial discovery. *United States v. Frick*, 490 F.2d 666 (5th Cir.); *Archer v. United States*, 393 F.2d 124 (5th Cir. 1968). As the Fifth Circuit has stated, "this Court and others have recognized that the rule announced in *Brady* is not a pretrial remedy and was not intended to override the mandate of the *Jencks Act*." *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975); *United States v. Harris*, 458 F.2d 670 (5th Cir. 1972). The Fifth Circuit, in fact, has not established any general rule as to when *Brady* material must be disclosed. *United States v. Crockett,* 534 F.2d 589, 603 n. 16 (5th Cir. 1976). Indeed, if *Brady* material is contained in a Jencks Act statement, such disclosure is timely for the purposes of the Brady rule when the Jencks Act material is turned over. *United States v. Brown*, 699 F.2d 704, 709 (5th Cir. 1983); *United States v. Anderson*, 574 F.2d 1347 (5th Cir. 1978); *United States v. Dotson*, 546 F.2d 1151 (5th Cir. 1977).

Therefore, *Brady* is not and was not intended to be a discovery tool for defendants, but was only a recognition of the unfairness of the prosecution's withholding of exculpatory material. See, *United States v. Persico*, 621 F. Supp. 842, 870 (S.D.N.Y. 1985) ("*Brady* is not to be utilized as a discovery device to supply a defendant with all evidence in the government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the government."); *United States v. Beasley*, 576 F.2d 626 630 (5th Cir. 1978) ("*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." (internal citation omitted)). Nor is the government required to provide a defendant with information he already has or which he can obtain himself "with any reasonable diligence." *United States v. Prior*, 546 F.2d 1254, 1259 (5th Cir. 1977).The government recognizes its continuing duty in this respect and has and will turned over all such material to the defense.

Prosecution Team|   In all criminal cases, the scope of a federal prosecutor's discovery obligations depends in part on the scope of the "prosecution team," that is, those individuals and agencies who are so closely aligned with the prosecution that documents and data in their possession are "in the possession, custody, or control" of the government

for purposes of discovery.  See *Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006) (the prosecution team may include local law enforcement if it significantly participated in the investigation of the government's case). On the other hand, the prosecution team generally. See *United States v. Lekhtman*, 2009 WL 5095379, at *7 (E.D.N.Y. Dec. 15, 2009) (The prosecution team does not include private organizations that provide information or evidence to the government).  Recently, Judge Fitzwater relied on, cited, and quoted *United States v. Josleyn*, 206 F.3d 144, 154 (1st Cir. 2000), which held, "[w]hile prosecutors may be held accountable for information known to police investigators, we are loath to extend the analogy from police investigators to cooperating private parties who have their own set of interests."[1]

It is well established that "[t]he government has no affirmative duty to take action to discover information which it does not possess," *United States v. Jones*, 34 F.3d 569, 599 (8th Cir. 1994) (quoting *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991)), and a significant body of case law limits the reach of the government's "possession, custody, or control" of information.

Federal courts have long recognized that "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *United States v. Gambino*, 835 F.Supp. 74, 95 (E.D.N.Y.1993)); see also, e.g., *United States v. Pelullo*, 399 F.3d 197, 217 (3d Cir. 2005); *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999).

---

[1]        The Honorable Chief Judge Sidney A. Fitzwater's Memorandum Opinion and Order in *United States v. Simpson*, 2011 WL 978235 *5 (N.D.Tex. March 21, 2011).

## Specific Discovery Requests and Responses

In response to all the requests, the government understands its continuing obligation to provide discovery.  As additional evidence useful to the prosecution team or to the defense of Brown is obtained by or becomes known to the prosecution team, the same will be provided to the defense.

**1. Any and all written or recorded statements, or copies thereof, made by Mr. Brown or by any indicted or unindicted coconspirator, accomplice or abettor whose statements the government will claim are binding on Mr. Brown. Rule 16(a)(1)(A), F.R.Cr.P.**

a.  Except as provided below, and other than Brown's numerous statements posted online and publically available to the defense (such as Twitter, YouTube, Pastebin, various media articles or interviews, etc.), the prosecution team has produced or made available to the defense all Brown's statement's in its possession.

b.  The prosecution team is in the process of reviewing additional data more recently received to determine whether the same contains Brown's statements for discovery purposes.

c.  Statements of witnesses (including coconspirators, accomplices, abettors, etc.) are considered Jencks materials, and will produced in accordance with local practice, that being one day before the witness testifies.

**2. Any and all documents and property obtained from Mr. Brown or any entity the government claims is owned or controlled by Mr. Brown, or from any alleged accomplice, or from any employee, agent, or professional consultant, or from any third party having custody of property belonging to Mr. Brown. Rule 16(a)(1)(C), F.R.Cr.P.**

The prosecution team has produced or made available to the defense all requested items in its possession.

**3. Any and all documents the government intends to use at trial as evidence in its case in chief.   Rule 16(a)(1)(C), F.R.Cr.P. This request includes not only those items which will be marked and offered into evidence, but all documents which will be relied upon or**

referred to in any way by any witness called by the government during its case in chief. It is requested that any documents in this category be specifically identified from among the mass of documents that have been or will be produced to the defense by the government, both to enable counsel to prepare effectively for trial and afford them an opportunity to move to suppress or preclude any evidence the government intends to use in its case in chief. See Rules 12(b)(3) & 12(d)(2), F.R.Cr.P.

The prosecution team has not begun its preparation for trial, and therefore has not identified those items it intends to mark as exhibits for its case in chief. However, the prosecution team has produced or made available to the defense, all the items seized or subpoenaed, or otherwise acquired (except for items found online and equally accessible to the defense).

4. Any and all documents that are material to the preparation of Mr. Brown's defense. Rule 16(a)(1)(C), F.R.Cr.P. This request includes, but is not limited to:
a. any and all audiotape or videotape recordings, whether made by the government or private individuals, other than those already produced by the government;

Other than items found online and equally accessible to the defense, the prosecution team does not have the requested items.

b. any and all draft transcripts of such recordings (we agree not to use such drafts as impeachment material at trial) and line sheets;

The prosecution team has not transcribed any recordings.

c. any and all final transcripts of such recordings;

The prosecution team has not transcribed any recordings.

d. all documents reflecting or relating to the chain of custody of physical evidence.

The prosecution team agrees to produce the requested item.

5. Any and all documents, or copies thereof, reflecting or relating to results or reports of

physical or mental examinations, scientific or computer tests, experiments, analyses, surveys or retrievals, accounting work papers or other financial analyses that were conducted in connection with the government's investigation of the charges contained in the indictment (Rule 16(a)(1)(D), F.R.Cr.P.)

The prosecution team agrees to produce the requested item.

**6. Any and all documents pertaining to any criminal conviction of Mr. Brown or any person the government will claim at trial to have been an accomplice or co-conspirator of Mr. Brown.**

The prosecution team provided Brown's criminal history information to the defense.

**7. Any and all surveillance photographs or videotapes depicting Mr. Brown, whether or not such surveillance was conducted in connection with this case.**

The prosecution team does not have the items requested above.

**8. A statement whether any information known by the government, or any evidence in the government's possession, custody, or control, was obtained by a search, and if so, a description or inventory of such evidence.**
        **a. for every search conducted pursuant to a warrant:**
                **i. all search warrants, and related papers;**
                **ii. all warrant applications and affidavits in support of any warrant or extension, and related papers;**
                **iii. all orders, returns, inventories and extensions, and related papers.**
        **b. for every search conducted without a warrant:**
                **i. a list of the personnel involved in the search;**
                **ii. a statement of the date and time of such search;**
                **iii. a statement of the place where such search was conducted.**

The prosecution team is in the process of requesting that the search warrant documents be unsealed for the limited purpose of providing discovery.  Once conditionally unsealed, the same will be provided to the defense pursuant to the limitations and restrictions set out in the Agreed Protective Orders.  To the extent that this production does not satisfy the above request, the prosecution team objects to the request as exceeding the scope of permissible discovery.

**9. A statement whether any information known by the government, or any evidence in the government's possession, custody, or control, was derived from, or obtained by any type of surveillance of any defendant, including, but not limited to, electronic surveillance, eavesdropping or other evidence- gathering, conducted through the use of wiretaps, pen registers, telephone subscription and toll records, videotapes or audiotapes, or otherwise, and if so, a description of such evidence.**

    **a.  for any surveillance conducted pursuant to a warrant:**
        **i. all eavesdropping warrants and other warrants, and related papers;**
        **ii. all applications and affidavits in support of any warrant or extension, and related papers;**
        **iii. all surveillance logs, seven-day reports, orders, returns, inventories and extensions, and related papers.**

    **b. for any surveillance conducted without a warrant:**
        **i. a list of the personnel involved in the search or surveillance;**
        **ii. a statement of the date and time of such search or surveillance;**
        **iii. a statement of the place where such search or surveillance was conducted.**

The prosecution team disclosed telephone subscription and toll records.  The remaining items do not exist.

**10. A list of all confidential sources who provided information for any application for a search warrant, arrest warrant or eavesdropping warrant in this case, regardless whether such warrant was actually sought or obtained.**

a.  A confidential human source (CHS) is any individual who is believed to be providing useful and credible information to the FBI for any authorized information collection activity, and from whom the FBI expects or intends to obtain additional useful and credible information in the future, and whose identity, information or relationship with the FBI warrants confidential handling.  see http://www.justice.gov/oip/docs/ag-guidelines-use-of-fbi-chs.pdf.

b.  The prosecution team did not rely on any CHSs in applying for search or arrest warrants in Brown's cases.

**11. A statement whether any evidence in the government's possession, custody, or control was obtained through the use or derivative use of a beeper or other tracking device, and if so, a description of such evidence.**

The prosecution team does not have the requested items.

**12. A statement of whether any evidence in the government's possession, custody, or control was obtained through a confidential informant, and if so, a description of such evidence.**

The prosecution team did not rely on any CHSs in presenting the facts to the Grand Jury for the return of Brown's Indictments.  (See the definition of CHS in the response to #10 above.)  If the prosecution team receives/reviews any information or evidence from a CHS and determines the same to be discoverable, it will notify the defense.

**13. If any recordings, reports of communications, fruits of any interception or search, or notes of any interview have been, or are intended to be, discarded or destroyed, please identify such material in sufficient detail to permit a timely request to the Court for appropriate relief.**

The prosecution team has not discarded or destroyed, and does not intend to discard or destroy any referenced item.

Sincerely,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

s/ *Candina S. Heath*
CANDINA S. HEATH
Assistant United States Attorney