IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | No: 3:12-CR-317-L |
| v. § | No: 3:12-CR-413-L |
| § | No: 3:13-CR-030-L |
| BARRETT LANCASTER BROWN § | |

### REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO CONTINUE TRIAL AND PRETRIAL DEADLINES

BARRETT LANCASTER BROWN, through his counsel, respectfully submits this memorandum in Reply to the government's Response in Opposition to his Motion to Continue Trial and Pretrial Deadlines.

**I.**

**THE COURT SHOULD GRANT THE CONTINUANCE**

**A. A Continuance is Needed in Order to Process and Review Forensic Evidence.**

As stated in Mr. Brown's motion, the <u>basis</u> of Mr. Brown's request for a continuance is that more time is required by the forensic vendor in order to adequately prepare the Electronic Stored Information (ESI) images for attorney review. The ESI images contain, *inter alia*, data from Mr. Brown's laptops, which are directly relevant to all charges in all indictments, in addition to being at the center of conduct charged in the 12:CR:413 and 13:CR:030 Indictments. Thus, Mr. Brown cannot prepare for trial without reviewing the content of the ESI images still being processed.[1] However, Mr. Brown cannot *access* the content of the ESI images, let alone

---

[1] While the government is correct that the size of the ESI in this case "pales in comparison to other more complex cases tried in this district with *hundreds* of Terabytes of data," GB at 9, that

1

conduct a meaningful review, until processing is complete.[2]  Given the amount of material, simply having the material ready for review, does not mean that it has been reviewed.[3]  There is no reason to believe that substitution of counsel has delayed this case significantly, if at all.[4]

As stated in Mr. Brown's motion, counsel for the defendant has worked diligently to prepare for trial. The government disagrees, arguing that "[t]he bulk of the discovery was in the possession of the prior defense counsel since approximately February 1, 2013," and the "new defense team did not retrieve Brown's file from the prior attorney until sometime in June 2013." To be clear, counsel conferred with the Office of the Federal Public Defender (FPD) prior to, and on, May 1, 2013, and requested the discovery materials in their possession.  The defense has diligently catalogued the discovery received in June of 2013, and continues to review that which is accessible. The ESI images must be *processed* by a forensics expert before counsel can conduct a meaningful review.

The government also argues that "the current defense team has not meet [SIC] *in person* with the prosecution team to discuss the discovery, the cases, or the upcoming trials," GB at 8 (emphasis added).  To the contrary, counsel for Mr. Brown has conferred, corresponded and had

---

does not change the fact that undersigned counsel cannot prepare for trial without reviewing the ESI.

[2] As stated in the moving papers, the forensic vendor estimates that processing the ESI images will take an additional two months time.

[3] As previously indicated, counsel estimates one month of review from completion of the processing.

[4] As noted by Magistrate Stickney, counsel's acceptance of this case has relieved the public of a significant financial burden.  When counsel entered the case on May 1, 2013, the ESI images were still being processed by the FPD Investigator, who indicated repeated delays in the ESI processing due to viruses and malware present within the medium, in addition to time constraints caused by the furlough.

telephonic meetings with the government on numerous occasions regarding various case issues, including discovery and other pretrial issues.[5]

Finally, no prejudice will result to the government by continuing this trial. In addition, the government continues to provide discovery, the most recent batch of which was received between July 29-31, and contained electronic data.

### B. Speedy Trial

The government's Opposition states "Brown failed to address Brown's right to or waiver of a speedy trial." The government argues that "Brown's attorney failed to explain why *seven* months was insufficient to in a non-complex case to prepare for trial" *Id.* at 1-2. In fact, the defense has worked diligently since appearing in the case *three* months ago. The hurdle faced by the defense at this juncture does not pertain to their *review* of the discovery, rather the processing time required in order to make the ESI images *accessible* for review. As such, the Speedy Trial Act provides the basis to exempt the case from the Act's time limitations in order to allow defense counsel to adequately prepare the defense. 18 U.S.C. § 3161(h)(8)(B)(iv). Alternatively, Mr. Brown waives his speedy trial rights. Counsel has confirmed his waiver orally, and intends on submitting a signed waiver by August 20, 2013.

---

[5] For instance, in the week of June 4, counsel had numerous phone and email communications with the government about the Protective Order, and mentioned that discovery had yet to be received. On June 25, 2013, counsel emailed the government indicating that he had received discovery from the FPD, that he had catalogued the files that were in an "accessible" format, and requested the search warrants and related affidavits in this case. Again, on July 1, 2013 counsel sent the government a discovery letter. *See* Defense Motion to Continue**,** Ex. A**.** As noted, the government did not reply to that letter until July 12, 2013, and did not produce the search warrants until July 15, 2013. Between July 15, 2013, and the filing date of the motion at issue, July 31, 2013, the defense has exchanged several emails and telephone calls with the government. Undersigned counsel welcomes the opportunity to meet government counsel in person and negotiate additional pre-trial issues.

## II.

## THE COURT SHOULD DENY
## THE GOVERNMENT'S REQUEST FOR A GAG ORDER

Mr. Brown's Motion to Continue is not in any way related to the government's implication that he intends to use the expanded time in order to try the case in the media, nor does the evidence reflect as much.[6] Upon entry into the case, counsel has advised Mr. Brown that making statements about the charges he faces is not in his best interests. Counsel has also advised Mr. Brown as to the Court's Protective Order, in addition to the guidelines imposed by *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), and its progeny, including *United States v. Brown*, 218 F.3d 415, 430 (5th Cir. 2000). Mr. Brown has complied.

As such, a gag order is not warranted in this case, for several reasons. First, as detailed below, Mr. Brown has made no statements to the media since undersigned counsel appeared on the case. Second, Mr. Brown's counsel have not made any statements to the media, except to state matters of public record or to explain the steps of the legal process. Third, although Mr. Brown's purported associates may be making statements about this case, those statements were not attributed to (and, at least as of May 1, 2013, are not properly attributable to) Mr. Brown. Mr. Brown and his counsel are well aware of the importance of maintaining a large potential jury pool in the Northern District of Texas, and at least since May 1, 2013, neither Mr. Brown nor his counsel have engaged in any acts that could even arguably be characterized as effectively undermining or interfering with the selection of impartial jury members. Therefore, the government's request for a gag order should be flatly rejected as unwarranted.

---

[6] At the outset, counsel objects to the government's use of a Response in Opposition to request a gag order from the Court, noting that the government has not conferred with counsel. To the extent the Court is inclined to grant the government's cross-motion, the Defense would request an opportunity to fully brief the matter.

The cases cited by the government all included *statements* regarding the *specific evidence* in the case. *See United States v. Hill*, 420 F. App'x 407, 412 (5th Cir. 2011) (defendant referenced a "clear statistical and anecdotal body of evidence"); *Brown*, 218 F.3d at 429 (defendants released wiretap recordings to press and participated in "extensive interviews" about the same). Counsel for Mr. Brown has made brief comments about the case comprising "general statements about the nature of the allegations and the defense, and statements of matters of public record," *Brown*, 218 F.3d at 429-30.[7]

Notably, and in stark contrast to the case law cited, the government does not cite any *statements* as the basis for their request for a gag order. Rather, the government admonishes the defense for "condoning" media coverage of Mr. Brown, GB at 11, and argues that the defense "coordinates and/or approves" of the use of the media. GB at 9.

In support, the government recites a number of interviews granted by Mr. Brown *before* undersigned counsel entered the case,[8] GB at 10 (¶¶ 23, 24), and a series of irrelevant allegations that do not merit a gag order. For instance, the government states that "Brown's friend confirmed in a statement to the press (posted on August 7, 2013) that lawyers had discussions with a specific media person to arrange an in-person interview with Brown in jail." GB at 11 (¶27). Presumably, the "specific media person" referenced by the government is Michael Hastings, a journalist, friend and colleague of Mr. Brown who passed away on June 18, 2013 in Los Angeles California. The government also references "numerous conversations" in April 2013 between Mr. Brown and an individual "who *wanted* to do a documentary on Brown." GB at 10 (¶25).

---

[7] Counsel has made limited statements, including a comment to Rolling Stone magazine for a forthcoming publication. All comments are in full accordance with *Gentile, Brown, et al.*
[8] The government does not recite statements made by Mr. Brown in these interviews that it claims are in violation of *Gentile, Brown, et al.*

Indeed, counsel has received numerous requests from members of the media, including documentary filmmakers, to interview Mr. Brown. To the extent possible, counsel has advised members of the media seeking an in-person interview with Mr. Brown that there is a Protective Order in place, that members of the media would need authorization from all the relevant parties including the authorities at Mansfield Correctional, and that Mr. Brown would be advised not to answer any questions unless submitted in advance, and in writing, so that counsel could screen questions to comply with the Court's Protective Order, *Gentile*, *Brown, et al*. After being advised of these conditions, no media outlet has conducted an in-person or telephonic interview with Mr. Brown.[9] An inspection of the visitor log at Mansfield Correctional should reveal that no members of the media, including Mr. Hastings, or a "documentary filmmaker" have met with Mr. Brown since counsel's entry in the case. The government's assertions are without merit.

Rather than citing to actual misconduct, the government makes a leap that counsel *condones* "false coverage."[10] This is not a basis to issue a gag order. *See Brown*, 218 F.3d at 430 (citing to *Smith v. Goguen,* 415 U.S. 566 (1974)) ("A restraining order of any type is unconstitutionally vague if it fails to give clear guidance regarding the type of speech that an individual may not utter.") This case's profile, on its own, should have no bearing on the Court's disposition in this matter.[11] To the contrary, the media interest in this case, coupled with Mr. Brown's radio silence and counsel's minimal commenting on general matters, only underscores that the government's request for a gag order is without merit.

---

[9] One media outlet, Rolling Stone magazine, has solicited and received comments by Mr. Brown that were well within the standards set forth in *Gentile, Brown*, et al.

[10] The government states that "most of the publicity about Brown thus far contain gross fabrications and substantially false recitations of facts and law which may harm both the government and the defense during jury selection." GB at 9-10.

[11] The media's interest in Mr. Brown long precedes counsel's involvement in the case, and the case itself. Prior to his arrest, Mr. Brown made frequent media appearances on networks such as MSNBC, and Fox News, and was a featured commentator in several recent documentary films.

The government's statements regarding First Amendment activities by Mr. Brown's supporters, and other members of the public, are irrelevant and should have no bearing on the issue. GB at 10 (¶¶ 26, 30) (making references to Mr. Brown's "friends" and "supporters."). When counsel was retained by the Barrett Brown Legal Defense Fund, it was made clear at the onset of the case that the Fund could not have any input on Mr. Brown's legal matters. Similarly, counsel cannot and does not control Mr. Brown's supporters.

Finally, the government takes issue with Mr. Brown's journalism.[12] Indeed, Mr. Brown is a journalist that has published in Vanity Fair, the Guardian, Huffington Post, and other media outlets. Mr. Brown continues to write op-eds for publication.[13] *See* Exh. A. Mr. Brown's publications do not discuss this case *at all*.[14] Therefore, any mischaracterization of Mr. Brown's publications as misconduct should have no bearing on the issue before the Court. *Brown*, 218 F.3d at 429 (citing *Procunier v. Martinez,* 416 U.S. 396 (1974)) ("It is axiomatic that the limitation on First Amendment freedoms must be no greater than is essential to the protection of the particular governmental interest involved").

## CONCLUSION

For the reasons set forth above, Mr. Brown respectfully requests the Court to grant the his Motion, and deny the government's request for a gag order.

Respectfully submitted,

 -s- *Ahmed Ghappour* 

---

[12] *See* GB at 11 (¶29) "[d]uring July 2013 and August 2013, Brown discussed with other persons the probability of Esquire, Rolling Stone, and/or Vice making certain articles public. Brown commented that his attorney was involved."
[13] *See, e.g.,* The Guardian, *The cyber-intelligence complex and its useful idiots,* Barrett Brown (July 1, 2013) (Exhibit A).
[14] Mr. Brown has a First Amendment right to speak and publish on matters unrelated to his case. Nonetheless, Mr. Brown sends all publications to counsel for review to ensure that the publications are not case related.

AHMED GHAPPOUR
*Pro Hac Vice*
Civil Rights Clinic
University of Texas School of Law
727 East Dean Keeton St.
Austin, TX 78705
415-598-8508
512-232-0900 (facsimile)
aghappour@law.utexas.edu

CHARLES SWIFT
*Pro Hac Vice*
Swift & McDonald, P.S.
1809 Seventh Avenue, Suite 1108
Seattle, WA 98101
206-441-3377
206-224-9908 (facsimile)
cswift@prolegaldefense.com

MARLO P. CADEDDU
TX State Bar No. 24028839
Law Office of Marlo P. Cadeddu, P.C.
3232 McKinney Ave., Suite 700
Dallas, TX 75204
214.744.3000
214.744.3015 (facsimile)
mc@marlocadeddu.com
*Attorneys for Barrett Lancaster Brown*

CERTIFICATE OF SERVICE

    I certify that today, August 9, 2013, I filed the instant motion using the Northern District of Texas's electronic filing system (ECF) which will send a notice of filing to all counsel of record.

/s/ Ahmed Ghappour
AHMED GHAPPOUR
/s/ Charles Swift
CHARLES SWIFT
/s/ Marlo P. Cadeddu
MARLO P. CADEDDU
*Attorneys for Barrett Lancaster Brown*